**1348**

William ADAMS and Dorothy Adams, his wife, and Thomas Shelton and Elizabeth Shelton, his wife, Plaintiffs,

v.

The FIDELITY AND CASUALTY COMPANY OF NEW YORK, a New Hampshire corporation, Defendant.

No. 88–0629–Civ.

United States District Court,
S.D. Florida.

Feb. 12, 1990.

James B. Tilghman, Jr., Miami, Fla., for plaintiffs.

James P. Murray, Miami, Fla., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SPELLMAN, District Judge.

THIS CAUSE comes before the Court upon Defendant's, the Fidelity and Casualty Company of New York, Motion for Summary Judgment filed with this Court on November 3, 1988. Plaintiffs filed a Memorandum of Law in Opposition, and Defendant filed a Reply thereto. Upon hearing oral argument on Defendant's Motion on May 30, 1989, this Court granted the same, *ore tenus*. This Order memorializes, and expands upon, this Court's pronouncements and reasoning.

### BACKGROUND

On January 23, 1982, Plaintiffs were traveling in an automobile owned and operated by Plaintiff Thomas Shelton in Broward County, Florida when their vehicle was struck by a vehicle owned and operated by a Sylvia Brannan. Ms. Brannan was allegedly intoxicated and failed to stop at a red light. Plaintiff William Adams received physical injuries, as a result of which, his wife, Dorothy Adams, suffered a loss of consortium.

The Sheltons were named insureds under a policy purchased from Defendant in North Carolina. Said policy provided uninsured motorist coverage in the amount of $200,000.00. Plaintiffs William and Dorothy Adams, as passengers in Shelton's vehicle, were additional insureds under the uninsured motorist provision. Ms. Brannan had no automobile liability insurance.

In addition to claims for physical injuries, each of the Plaintiffs asserted claims for punitive damages based on Ms. Brannan's egregious conduct. Plaintiffs notified Defendant of their uninsured motorist claims shortly after the accident, and by letter dated June 8, 1983, offered to settle all claims within the policy limits for the sum of $175,000.00. Despite repeated requests by Plaintiffs between June of 1983 and May of 1985, Defendant allegedly refused to negotiate and settle Plaintiffs' claims.

The Sheltons' insurance policy permitted Plaintiffs to either arbitrate their uninsured motorist claims, or to bring an action in the circuit court and join the uninsured motorist as a party. Plaintiffs elected the latter, and sued Brannan and Defendant in the Eleventh Circuit Court in and for Dade County, Florida. Brannan did not appear and Plaintiffs took a default judgment against her on the issue of liability.

The case proceeded to trial and the jury returned a verdict totalling $70,000.00 in compensatory damages, and $750,000.00 in punitive damages against Brannan for her egregious conduct in causing the accident. Subsequent to this award of damages, Defendant moved to limit its liability under the uninsured motorist provision of the policy to the amount awarded as compensatory damages—$70,000.00. Defendant maintained that it was only liable for the compensatory damages awarded to Plaintiffs, for Florida law prohibits the recovery of punitive damages from an insurance carrier. The trial court agreed, and entered judgment against Defendant in the amount of the $70,000.00 compensatory award, refusing to allow recovery of any of the punitive portion of the award. Plaintiffs appealed the trial court's decision.

On appeal, the Third District Court of Appeal held that substantive questions concerning insurance coverage are to be determined by the law of the state in which the parties reach their agreement, where the policy is issued, and where the premiums are paid. *Adams v. Brannan*, 500 So.2d 236, 238 (Fla. 3d DCA 1986), *review denied*, 511 So.2d 297 (Fla.1987). The Court found that North Carolina law governed the construction of the insurance policy because Defendant issued the policy in North Carolina to the Sheltons who are North Carolina residents. Under North Carolina law, an insured may recover punitive damages from its insurance carrier under an uninsured motorist policy based on the conduct of an uninsured motorist. Consequently, Plaintiffs were awarded compensatory and punitive damages to the extent of the policy limits—$200,000.00, $130,000.00 of which was uncollectible under Florida law.

Defendant has satisfied $200,000.00 of the $820,000.00 judgment.

Subsequent to the aforementioned appeal, Plaintiffs instituted the instant action in the Eleventh Circuit Court in and for Dade County, Florida, whereupon Defendant removed the cause to federal court. Plaintiffs assert first-party bad faith claims against Defendant pursuant to Fla.Stat. § 624.155(1)(b)(1) for allegedly failing to settle their insurance claims in good faith.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered "forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ruling on a summary judgment motion should be guided by the substantive evidentiary standard of proof that would apply at the trial on the merits. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is mandated against a party who, after adequate time for discovery and upon motion, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, it is the Court's obligation to view the facts in the light most favorable to the non-moving party and to allow the non-moving party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637, 638 (11th Cir. 1984). If there is no genuine issue of material fact, summary judgment is proper because it avoids needless and costly litigation and promotes judicial efficiency. *Trustees of Plumbers Local No. 519*

**1350**

*Health and Welfare Trust Fund v. Garcia,* 677 F.Supp. 1554, 1556 (S.D.Fla.1988). However, because summary judgment is an extreme remedy, it should not be granted unless the moving party has established the right to judgment beyond controversy.

### DISCUSSION

Plaintiffs instituted first-party bad faith claims against Defendant pursuant to Fla. Stat. § 624.155(1)(b)(1) which permits "any" aggrieved party to bring a civil action against his or her insurer for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his [or her] interests." Plaintiffs allege that Defendant failed to settle their claims in good faith, and request that this Court measure the damages flowing therefrom by the punitive damages awarded in the lower action. Specifically, Plaintiffs seek to recover from Defendant the full amount of punitive damages awarded Plaintiffs against Ms. Brannan— $620,000.00 [$750,000.00 less $130,000.00 already paid by Defendant]. Defendant asserts that Plaintiffs are not entitled to recover the excess punitive award from Defendant. This Court agrees.

*Whether Fla.Stat. § 624.155 Extends A Cause of Action to First–Party Insureds Against Their Insurer For Bad Faith Refusal to Settle*

■ The threshold issue of law which this Court must resolve is whether Fla. Stat. § 624.155 extends a cause of action to a first party insured against their insurer for failing to settle in good faith. Until recently, Florida courts upheld a distinction between the duty owed by insurers to first and third party claimants. Whereas an insured could maintain an action against their insurer for failing to act in good faith in settling a third-party's claim (thereby exposing the insured to liability in excess of their insurance coverage), an insured had no right to proceed against his or her own insurer for failing to settle in good faith an uninsured motorist claim. *See, e.g., Thompson v. Commercial Union Ins.*

*Co. of New York,* 250 So.2d 259 (Fla.1971); *Baxter v. Royal Indem. Co.,* 285 So.2d 652 (Fla. 1st DCA 1973), *cert. discharged with opinion,* 310 So.2d 725 (Fla.1975); and *American Fire and Casualty Co. v. Davis,* 146 So.2d 615 (Fla. 1st DCA 1962). Unless the insured could allege intentional infliction of emotional distress or other intentional tort, the only relief available on an uninsured motorist claim was a cause of action for breach of contract. *See, e.g., Butchikas v. Travelers Indem. Co.,* 343 So.2d 816 (Fla.1976); *Allstate Ins. Co. v. Kelley,* 481 So.2d 989 (Fla. 2d DCA 1983) (and cases cited therein); *Smith v. Standard Guar. Ins. Co.,* 435 So.2d 848 (Fla. 2d DCA 1983) (and cases cited therein); and *Industrial Fire & Casualty Ins. Co. v. Romer,* 432 So.2d 66, 69 n. 5 (Fla. 4th DCA 1983).

In 1982, the Florida Legislature enacted Fla.Stat. § 624.155, the so-called "Bad Faith Statute." In passing Section 624.155, Florida joined other states which impose an implied covenant of good faith in settling first and third party insurance claims. *See, e.g., Gruenberg v. Aetna Ins. Co.,* 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). Both federal and state courts have construed the statute to extend a cause of action for bad faith to first and third parties alike. *See, e.g., Jones v. Continental Ins. Co.,* 716 F.Supp. 1456 (S.D.Fla.1989); *Opperman v. Nationwide Mut. Fire Ins. Co.,* 515 So.2d 263 (Fla. 5th DCA 1987); *Fidelity and Casualty Ins. Co. of New York v. Taylor,* 525 So.2d 908 (3d DCA 1987); *United Guar. Residential Ins. Co. of Iowa v. Alliance Mortg. Co.,* 644 F.Supp. 339 (M.D.Fla.1986); and *Rowland v. Safeco Ins. Co. of Am.,* 634 F.Supp. 613 (M.D.Fla.1986). Having determined that in enacting Section 624.155, the Legislature extended a cause of action to first-party insureds against their insurer for failing to settle in good faith, this Court must now determine what is the proper measure of damages.

*Proper Measure of Damages In First– Party Bad Faith Actions Brought Pursuant to Fla.Stat. § 624.155*

■ Plaintiffs argue that they are entitled to the excess punitive damage award

based on Brannan's egregious conduct as damages upon a finding that Defendant failed to settle in good faith. Defendant vigorously argues that only those damages proximately caused by Defendant's alleged bad faith can serve as the proper measure of damages. Hence, because the award of punitive damages was based on Ms. Brannan's conduct which preceded Defendant's alleged bad faith, Defendant argues that it cannot serve as the measure of damages in the instant action.

In third-party suits, damages ordinarily include the "excess" judgment over the policy limits. *Butchikas*, 343 So.2d at 817–18. The rationale for awarding such damages is that an insurer undertakes a fiduciary duty when it assumes complete control over an insured's defense. When an insurer breaches this duty by acting in bad faith, exposing its insured to a judgment in excess of policy limits, the insured may recover the excess and other potential compensatory and punitive damages. *Id.*

Damages incurred in suits involving uninsured motorist claims are entirely different. Unlike third-party suits, *actual* damages in suits involving uninsured motorist claims are limited to the extra costs of going to trial and the interest on money that should have initially been paid. Hence, because the first-party insured is not exposed to excess liability, the rationale for allowing recovery in excess of policy limits in third-party suits is inapplicable to suits involving uninsured motorist claims. Nevertheless, certain federal and state courts have ruled that an excess arbitration award may be recovered as damages under the statute in a first-party suit. *Jones*, 716 F.Supp. 1456; *Wahl v. Insurance Co. of N. Am.*, No. 87–1187–CA–17 (19th Fla.Cir.Ct. June 6, 1989). However, this Court holds that as a matter of law, Plaintiffs are not entitled to the excess punitive damage award based on Ms. Brannan's egregious conduct.

While North Carolina law applies to questions regarding the substantive provisions of the insurance contract and the construction thereof, *Brannan*, 500 So.2d 236, Florida law applies to questions regarding Defendant's performance under the contract and the *remedies available for non-performance, Government Employees Ins. Co. v. Grounds*, 332 So.2d 13 (Fla.1976). Plaintiffs concede that Florida law controls this matter, for they instituted this action pursuant to Section 624.155, rather than on the insurance contract itself. Under Florida law, an insured cannot recover punitive damages from its insurer based upon the conduct of an uninsured motorist. *Suarez v. Aguiar*, 351 So.2d 1086 (Fla. 3d DCA 1977), *cert. dismissed,* 359 So.2d 1210 (1978). Accordingly, it follows that Plaintiffs cannot recover such damages under Section 624.155.

Based on the above and foregoing, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment is GRANTED. Defendant is directed to file a proposed Final Judgment with this Court within 10 days of this Order.

DONE AND ORDERED.