572 So.2d 937 (1990)
Carol HOLLAR and Lewis Edwin Hollar, Jr., Appellants,
v.
INTERNATIONAL BANKERS INSURANCE COMPANY and State Farm Mutual Automobile Insurance Company, Appellees.
No. 89-1951.
District Court of Appeal of Florida, Third District.
November 27, 1990.
Rehearing Denied January 31, 1991.
*938 Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, Robert Mayes and Robert M. Loehr, Pensacola, for appellants.
Walton, Lantaff, Schroeder & Carson, John Patrick Joy, Geoffrey B. Marks, Kimbrell & Hamann, Sam Holland and Andrew H. Bate, Miami, for appellees.
Before NESBITT, BASKIN and GODERICH, JJ.
NESBITT, Judge.
The question we are required to decide in this appeal is whether the statutory measure of damages under section 624.155, Florida Statutes (1989) limits the measure of damages, established by the Florida supreme court, for failure to settle a claim in good faith. We hold that there is no such limitation and we reverse the summary judgment below which held to the contrary.
In compliance with section 624.155, Florida Statutes (1989), the civil remedy section of the Florida Insurance Code, the Hollars furnished their insurers with notice of a claim of bad-faith insurer action. The Hollars sought recovery alleging that while their insurers knew the Hollars' liability for the injury of a third party in an automobile accident was clear and damages were in excess of their policy limits, insurers, in bad faith, failed to accept the injured party's offer to settle her claim within those limits. Additionally, they alleged insurers failed to advise of the conflict of interest between themselves and the Hollars, and failed to advise of the likelihood of the judgment in excess of policy limits which was thereafter entered.
Insurers, relying on their interpretation of section 624.155(2)(d), within the sixty-day notice period of that section, tendered to the Hollars their policy limits. Summary judgment was thereafter entered in the insurers' favor. We disagree with the trial court's conclusion that the insurers' actions in tendering only their policy limits satisfied section 624.155(2)(d) and we reverse and remand on that basis.
Section 624.155 provides in part:
(1) Any person may bring a civil action against an insurer when such person is damaged:
... .
(b) By the commission of any of the following acts by the insurer:
1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests.
Section 624.155(2)(d) states:
No action shall lie if, within 60 days after filing notice, the damages are paid or the circumstances giving rise to the violation are corrected. (emphasis added)
Under the decisional law, when an insured has surrendered to his insurer all control over the handling of a third-party *939 claim, including all decisions with regard to litigation and settlement, the insurer must assume a duty to exercise such control to make such decisions in good faith and with due regard for the interest of the insured. Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783 (Fla. 1980), cert. denied, 450 U.S. 922, 101 S.Ct. 1372, 67 L.Ed.2d 350 (1981). This good-faith duty obligates the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of excess judgment, and to advise the insured of any steps he might take to avoid same. Boston Old Colony Ins. Co., 386 So.2d at 786, citing Ging v. American Liberty Ins. Co., 423 F.2d 115 (5th Cir.1970).
The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person faced with the prospect of paying the total recovery would do so. Boston Old Colony Ins. Co., 386 So.2d at 785, citing Government Employees Ins. Co. v. Grounds, 311 So.2d 164 (Fla. 1st DCA 1975), cert. discharged, 332 So.2d 13 (Fla. 1976). The insurer is subject to liability in excess of policy limits if it acts in bad faith or through fraud. Baxter v. Royal Indem. Co., 285 So.2d 652, 656 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975).
Section 624.155 changes neither the case law obligation of good faith nor the measure of the damages due an insured once bad faith is proven. Rather than changing the decisional law, section 624.155 simply expands the cause of action to first-party claims, see Cardenas v. Miami-Dade Yellow Cab Co., 538 So.2d 491 (Fla. 3d DCA), review dismissed, 549 So.2d 1013 (Fla. 1989); Opperman v. Nationwide Mut. Fire Ins. Co., 515 So.2d 263 (Fla. 5th DCA 1987); review denied, 523 So.2d 578 (Fla. 1988); Rowland v. Safeco Ins. Co. of America, 634 F. Supp. 613 (M.D.Fla. 1986); see Vega v. Travelers Indem. Co., 520 So.2d 73 (Fla. 3d DCA), review denied, 531 So.2d 169 (Fla. 1988), and adds a procedural first step that requires insureds to notify the insurer of a bad-faith claim. See § 624.155(2)(a), Fla. Stat. (1989). Thus, it provides a cumulative and supplemental remedy.
Statutes should be construed to harmonize with existing law. Statutes intending to alter the established case law must show that intention in unequivocal terms. Law Offices of Harold Silver, P.A. v. Farmers Bank & Trust Co., 498 So.2d 984 (Fla. 1st DCA 1986). The legislature is presumed to know the existing law at the time it enacts a statute. Ford v. Wainwright, 451 So.2d 471, 475 (Fla. 1984); Adler-Built Indus., Inc. v. Metropolitan Dade County, 231 So.2d 197, 199 (Fla. 1970). We agree with the fifth district's observation in Opperman that there is nothing in section 624.155 which indicates an intent to limit a remedy existing under the decisions of the supreme court. Opperman, 515 So.2d at 266. On the contrary, the statute clearly indicates the legislature's intent to expand that remedy. Id.
Appellants incorrectly rely on Clauss v. Fortune Ins. Co., 523 So.2d 1177 (Fla. 5th DCA 1988) as authority for the proposition that the payment of "damages" under section 624.155(2)(d) can be satisfied merely by the payment of an insured's policy limits. However, in Clauss, unlike the instant case, no award in excess of policy limits was sought by the insured. Furthermore, in Clauss, no insurer badfaith was in fact found.
In the instant case, insurers' self-serving reading of the term "damages" as being confined to policy limits is an illogical interpretation, a radical departure from the decisional law and, further, an explanation in no way consistent with the legislature's stated desire for insurers to act in good faith towards their insureds. See Jones v. Continental Ins. Co., 716 F. Supp. 1456, 1460 (S.D.Fla. 1989). The function of the bad-faith claim is to provide the insured with an extra contractual remedy. Opperman, 515 So.2d at 267, citing 15A Couch on Insurance 2d, § 58:1, p. 248 (1983). Thus, the argument that upon a showing of bad faith, damages should be limited to the insured's contractual policy limits is all the more unreasonable. Damages, as both the clear wording of the statute and past Florida case law establish, must be all damages *940 resulting from an insurer's bad-faith actions.
Following the analysis as stated above, we conclude that when the legislature employed the term "damages" in section 624.155(2)(d), it necessarily contemplated the same elements of damages that are viable and extant under the decisional law of the supreme court. Consequently, under the statutory formulation established by section 624.155, a tender of policy limits will not ordinarily satisfy the insured's full claim of damages for a badfaith claim. Thus, if, upon remand, badfaith actions by the insurers are proven, the Hollars' damages would equal the amount of the excess judgment for which they are now responsible. See Jones v. Continental Ins. Co., 716 F. Supp. at 1460. That sum, which is in excess of several hundred thousand dollars over policy limits, was never tendered. Therefore, the civil remedy under section 624.155(1)(b)1 remains unsatisfied and an action under this section remains available to the Hollars.
The insurers additionally argue that they acted in a timely fashion to verify and offer settlement to the injured party and that no bad faith in fact occurred. Upon remand, it will be up to the trial court to determine whether the insurers performed their obligations to the Hollars in good faith.
Accordingly, summary judgment in favor of the insurers is reversed and the case is remanded.