943 So.2d 887 (2006)
Beverly Holmes LEE and Kathy Ann Lampkin, Appellants,
v.
SECURITY NATIONAL INSURANCE COMPANY, Appellee.
No. 4D05-4261.
District Court of Appeal of Florida, Fourth District.
November 29, 2006.
*888 David B. Pakula, Pembroke Pines, and C. David Durkee, Coral Gables, for appellant Beverly Holmes Lee.
James K. Clark and Dexter Romanez of Clark, Robb, Mason, Coulombe, Buschman & Cecere, Miami, for appellant Kathy Ann Lampkin.
Maureen G. Pearcy and Andrew E. Grigsby of Hinshaw and Culbertson, L.L.P., Miami, for appellee.
FARMER, J.
Lampkin was insured by Security National for motor vehicle liability coverage in 2002 when she rear-ended a Metro-Dade public bus with 30 passengers. Several passengers claimed injuries as a result. Lampkin's policy provided bodily injury liability coverage, policy limits of $20,000 per accident, $10,000 per person. Security National paid two claimants $10,000 eachwhich, it argued, exhausted policy limits and all of its duties under the policy. When another claimant, Lee, filed a new claim in excess of $10,000, the company at first denied Lee's claim because of the exhausted policy limits but later tendered a full $10,000. When Lee rejected the tender, Security National filed a complaint for declaratory relief, naming both Lee and Lampkin. It sought a declaration that its tender extinguished any bad faith claim the insureds might assert. The trial court granted summary judgment in favor of Security. We reverse.
Before suit, Lampkin responded to Security's handling of Lee's claim by filing a notice of violation with the Department of Insurance, in which she alleged a violation of section 624.155. § 624.155(3)(a), Fla. Stat. (2004). She alleged that its bad faith consisted of quickly settling with two claimants without first assessing all claims arising from the accident and making a good faith allocation to settle as many claims as possible before exhausting policy limits. Security National thereupon tendered $10,000 to Lee in exchange for a general release of all claims.
It is important to keep in sight just who is suing whom and for what, as well as the relief sought and granted by the summary judgment. The carrier's suit was for a declaratory judgment. It specifically sought judgment declaring that any bad faith claim resulting from the Lee claim was extinguished by its tender, arguing that policy limits had been exhausted and that it owed no further duties under the policy to any insured. At some point during this litigation it appears that Lampkin actually filed a counterclaim for bad faith damages from the carrier, but the bad faith claim was dismissed as premature. Neither Lampkin nor Lee made any attempt thereafter to actually file a bad faith claim.
It is apparent that Security's motion for summary judgment sought more than an ordinary declaration as to coverage under the policy. In effect, Security wanted a preemptive declaration upholding what could be an affirmative defense in any statutory bad faith action that might be filed later by Lee or Lampkin. Appellants do not challenge whether Security's attempt to seek an anticipatory declaration as to an affirmative defense extinguishing a potential, but not yet existent, bad faith claim represents a proper use of the declaratory judgment remedy. We therefore express no opinion as to this attempted use of the declaratory judgment procedure.
As to Lee, a third party claimant, Security argued that its tender of $10,000 was made before the lapse of 60 days from the notice filed by Lampkin, and therefore the tender extinguished any bad faith claim. Security specifically argued that Macola v. Government Employees Insurance Company, 410 F.3d 1359 (11th Cir.2005) (certifying *889 issue whether tender extinguished statutory and common law bad faith claims to Florida Supreme Court), and Talat Enterprises, Inc. v. Aetna Casualty and Surety Company, 753 So.2d 1278 (Fla. 2000), supported the carrier's claim to judgment as a matter of law that all bad faith claims had been extinguished.
The defendants responded to the motion for summary judgment by arguing that no bad faith claims should be deemed barred. Lampkin argued that her inchoate bad faith claim was based on our decision in Farinas v. Florida Farm Bureau General Insurance Company, 850 So.2d 555 (Fla. 4th DCA 2003), review den., 871 So.2d 872 (Fla.2004). Lampkin asserted that:
"Security National acted in bad faith in failing to fully investigate all the claims at hand to determine how to best limit the insured's liability. It further failed to settle as many claims as possible with[in] the policy limits and indiscriminately settled selected claims[,] leaving the insured at risk of excess judgments that could have been minimized by wiser settlement practice."
Lee argued that the policy limits tender was ineffective to extinguish her third-party bad faith claim because her damages from the accident exceed $10,000. She relied on Hollar v. International Bankers Insurance Company, 572 So.2d 937 (Fla. 3d DCA 1991), which held that the bad faith statute did not purport to make a policy limits tender sufficient to a common law ("decisional") bad faith claim. 572 So.2d at 938-40.
In its pertinent provisions, the trial court's order granting summary judgment states merely that:
"ORDERED AND ADJUDGED that the Motion is hereby GRANTED. Talat Enterprises Inc. v. Aetna Casualty and Surety Co., 753 So.2d 1278 (Fla. 2000)."
The final judgment itself provides only that:
"Final Summary Judgment is entered in favor of Plaintiff, SECURITY NATIONAL INSURANCE COMPANY, and against Defendants, BEVERLY HOLMES LEE and KATHY ANN LAMPKIN."
It is striking that the order and judgment contain no express declaration as to precise rights and duties of the parties under the policy. Nor is there even any specific declaration as to the effect of the tender on any inchoate bad faith claim.[1] Yet each side argues different outcomes as to any bad faith claims that might be made against the carrier.
As we have shown, the order granting summary judgment refers to Talata first-party, statutory bad faith claim by a named insured against his carrier. The policy there provided property damage coverage for a business. A fire caused substantial damages, closing the restaurant. An arbitration fixed the amount of the covered loss. The carrier paid that amount just before the insured filed notice of a bad faith claim against the carrier. The supreme court held that the first-party bad faith claim never came into existence because by the time 60 days had elapsed after the filing of the notice, the carrier had fully paid the loss. 753 So.2d at 1282. Because first-party bad faith claims are based solely on the statute, and because Talat involves only a first-party bad faith claim under section 624.155, the *890 order's citation to Talat might seem to imply that some first-party, statutory bad faith claim might be deemed extinguished. Yet it does not actually say so in a formal declaration.
Security argued that the Eleventh Circuit's decision in Macola entitled it to summary judgment extinguishing all the bad faith claims, but no mention was made of that holding in the summary judgment we review today. Since the trial court decided this case, however, the supreme court has responded to the Eleventh Circuit's certified question. Macola v. Gov't Empl. Ins. Co., ___ So.2d ___, 31 Fla. L. Weekly S690, 2006 WL 3025757 (Fla. Oct. 26, 2006). As a matter of first impression the supreme court held that a carrier's tender of policy limits within 60 days of the statutory notice and after initiation of a lawsuit against the insured but before entry of an excess judgment, does not have the effect of extinguishing a common law, third party, bad faith claim against the carrier.
Although there is no actual bad faith claim pending in this case, it appears to us that the one described by Lee would fall into the classification of a third party common law bad faith claim. As a consequence, to the extent that the summary judgment was meant to bar Lee's third-party, common law, bad faith claimif that were the actual intention of the trial judgea summary judgment so declaring would be error under the supreme court's Macola decision.
We again emphasize that the judgment does not explicitly declare that policy limits have been exhausted, that the carrier no longer owes any defense to its named insured, or that any particular bad faith claim has actually been extinguished.[2] For the guidance of the trial judge and parties on remand, however, we do offer the following. To the extent that it was meant to bar a first party bad faith claim of the kind in Farinas, it would seem to be in error. To the extent that it purports to bar a third party bad faith claim as in Macola, it would also seem to be in error.
Reversed.
GUNTHER and GROSS, JJ., concur.
NOTES
[1] We remind trial judges and lawyers that a declaratory judgment action seeks a formal, express declaration of some legal status or conclusion. That means that in any order granting summary judgment in a declaratory judgment proceedingand most surely in any final judgmentthe trial judge must explicitly declare some legal conclusion.
[2] Because the summary judgment and consequent final judgment contain no explicit declarations by the trial judge as to the rights and duties of the parties, either under the policy or as to any incipient bad faith claims, we do not think it appropriate for us to read any particular declarations into the judgment by construction.